UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SAINT LAURIE LTD.,

                    Plaintiff,          13-CV-6857 (DAB)
                                        MEMORANDUM AND ORDER

          v.


YVES SAINT LAURENT AMERICA,
INC. et al.,

                    Defendants.
------------------------------------X

DEBORAH A. BATTS, United States District Judge.

     On September 26, 2013, Plaintiff Saint Laurie Ltd.

("Plaintiff" or "Saint Laurie") filed the present action.

Plaintiff filed an Amended Complaint on December 23, 2013,

against Defendants Yves Saint Laurent America, Inc., Yves Saint

Laurent S.A.S. (collectively, "Defendants YSL"), Kering S.A.

("Kering"), Kering Americas, Inc. ("KAI"), and Luxury Goods

International S.A. ("LGI") (collectively, "Defendants").  Saint

Laurie asserted eight Claims against Defendants: (1) breach of

contract; (2) trademark infringement, pursuant to 15 U.S.C. §

1125; (3) false designation of origin, pursuant to 15 U.S.C. §

1125(a); (4) trademark dilution, pursuant to 15 U.S.C. §

1125(c); (5) trademark infringement under New York common law;

(6) trademark dilution, pursuant to New York General Business

Law § 360(1); (7) unfair competition under New York common law;

and (8) unlawful deceptive acts and practices, pursuant to New York General Business Law § 349.

Now before the Court are four Motions to Dismiss filed by Defendants.  Defendants YSL and LGI move to dismiss Claim One of the Amended Complaint.  Defendants Kering and KAI filed a Motion to Dismiss the entire Amended Complaint. Also before the Court is Plaintiff's Motion to Amend/Correct Order on Motion for Preliminary Injunction.[1]

For the reasons stated below, Defendants YSL and LGI's Motions to Dismiss Count One are DENIED. Defendant Kering's Motion to Dismiss is DENIED as to Count One but GRANTED without prejudice as to Counts Two through Eight. Defendant KAI's Motion to Dismiss all claims is GRANTED without prejudice. Plaintiff's Motion to Amend is DENIED as to the decision on the Preliminary Injunction but the Order is amended to clarify certain findings of the Court, as set forth below.

---

[1] Unless otherwise noted, the Court shall refer to the four Motions to Dismiss collectively as the "Motions to Dismiss." The Court shall refer to the Motion to Amend/Correct Order on Motion for Preliminary Injunction as "Motion to Amend."

2

I. FACTUAL BACKGROUND

A.    Events Giving Rise to the Instant Suit

The following facts are assumed true for purposes of the instant Motions.

Plaintiff is a manufacturer of men and women's clothing. (Am. Compl. ¶ 23.) Since 1956, it has used the trademark, "Saint Laurie," which is registered with the United States Patent and Trademark Office ("USPTO") as the following trademarks: International Class 25 for men and women's clothing, including suits, sport coats, and ties; International Class 35 for clothing for theatrical and motion picture productions; and International Class 40 for tailoring services and bespoke clothing for men and women.[2] (Id. ¶¶ 7, 23 & Ex. 5.)

Beginning in the 1950s, clothing designer Yves Saint Laurent began marketing men and women's ready-to-wear clothing and fashion accessories under the marks "Yves Saint Laurent" and "YSL."[3] (Id. ¶¶ 27-28.) In the 1970s, YSL launched a men's clothing line in the United States.  (Id. ¶ 30.) Plaintiff

---

[2] Bespoke clothing, also known as made-to-measure, is clothing that is custom tailored for an individual.

[3] For clarity, "YSL" refers to the clothing brand.  Defendants Yves Saint Laurent America, Inc. and Yves Saint Laurent S.A.S. are referred to collectively as "Defendants YSL."

subsequently filed a trademark infringement action in 1974
against the then-existing YSL companies——Yves Saint Laurent
Men's Clothing, Inc. and Yves Saint Laurent, Inc.——and their
parent company, Lanvin-Charles of the Ritz, Inc.[4]  (Id. ¶ 30.) In
1975, the parties resolved the suit via a settlement agreement.
(Id. Ex. A (the "1975 Agreement").)

     The 1975 Agreement provided that a YSL store in New York,
New York would have its sign altered to "Saint Laurent Rive
Gauche" and that "Saint Laurent Rive Gauche" labeled men's
clothing only could be sold in Saint Laurent Rive Gauche stores.
(1975 Agreement ¶ 3, Ex. 2.) The parties also agreed that YSL's
advertisements and labeling pertaining to men's clothing sold
under the Yves Saint Laurent or Saint Laurent Rive Gauche
trademarks would state "Yves Saint Laurent" or "Saint Laurent
Rive Gauche," respectively.  (Id. ¶ 5.) The 1974 Defendants were
prohibited from selling or advertising "men's clothing under the
trade name 'Saint Laurent' alone."  (Id. ¶ 5.) In return,
Plaintiff agreed that "advertising and/or labelling by [Saint
Laurie] in connection with French styled or modeled clothing
[would] be accompanied by a prominent display of the name 'Saint

---

[4] The defendants in the 1974 and 1981 suits are not parties to
the instant action, the reason for which shall be explained
below. See infra at 6-7.

Laurie Ltd.'" (Id. ¶ 9.) The 1975 Agreement was to remain in effect as long as Plaintiff sold men's clothing under the Saint Laurie trade name.  (Id. ¶ 10.) Finally, the 1975 Agreement provided that "[a] party aggrieved by a breach of this agreement shall be entitled to specific performance as a remedy." (Id. ¶ 13.)

    In the early 1980s, YSL launched a women's clothing line in the United States using the name "Saint Laurent."  (Am. Compl. ¶ 32.) Plaintiff filed a trademark infringement suit in 1981 against Yves Saint Laurent, Inc. and Charles of the Ritz Group Ltd.  (Id. ¶ 32.) The parties again settled through a 1982 Stipulation of Settlement and Discontinuance.  (Id. Ex. B. (the "1982 Agreement").) The 1981 Defendants agreed not to use "Saint Laurent" as the trade name "in connection with men's clothing to the extent restricted by the [1975 Agreement] or on or in connection with women's suits, sport coats, overcoats, raincoats, or vests."  (1982 Agreement ¶ 2.) The 1981 Defendants were permitted to use and register for the trademark "Saint Laurent" in all goods and services not otherwise restricted by the 1975 Settlement or 1982 Agreement.  (Id. ¶ 3.) The 1981 Defendants agreed to notify Plaintiff of any application to register the trademark "Saint Laurent" with the USPTO or New

York State Trademark Office.  (Id. ¶ 5.) In return, Plaintiff "agree[d] not to assert any claim or commence any action . . . based on the use of 'SAINT LAURENT' as permitted above, nor oppose or petition to cancel the registration of 'SAINT LAURENT' based on the use of 'SAINT LAURENT' as permitted above."  (Id. ¶ 3.) Plaintiff also would not use the "Saint Laurie" name "in connection with perfumery or cosmetics."  (Id. ¶ 2.) The 1982 Agreement disclaimed liability of YSL to Saint Laurie for use of "Saint Laurent" by a third party.  (Id. ¶ 6.)  Finally, it provided, "[a]ny party aggrieved by a breach of this stipulation shall be entitled to specific performance as a remedy." (Id. ¶ 11.)

In 1999, Plaintiff alleges the PPR Group purchased the then-existing YSL companies and the YSL brand; the PPR Group has since been renamed as Kering S.A., a Defendant in the instant suit.  (Am. Compl. ¶ 29.) Through that 1999 transaction or transactions, Plaintiff alleges, "[u]pon information and belief, Kering . . . acquired the entirety of the assets, liabilities and obligations of the predecessor YSL Companies . . . including the contractual obligations set forth in the 1975 Agreement and 1982 Stipulated Order."  (Id. ¶ 14.)

Defendant Kering is the parent corporation of Defendants YSL, LGI, and KAI.  (Id. ¶¶ 13-14.) Defendant LGI distributes goods using the YSL trademarks and allegedly is the successor in interest to the YSL trademarks, the 1975 Agreement, and the 1982 Agreement (collectively, the "Agreements").  (Id. ¶¶ 10-11.) Defendant KAI is a subsidiary of Defendant Kering.  (Id. ¶ 15.) Defendant Yves Saint Laurent S.A.S. is an affiliate of Defendant Yves Saint Laurent America, Inc.  (Id. ¶¶ 8-9.)

Plaintiff alleges that YSL has began a rebranding campaign: it now promotes itself as "Saint Laurent," with "Paris" appearing below.  (Id. ¶ 36, Exs. C-D.) Plaintiff alleges that Defendants advertise and sell men and women's clothing using the new trade name "Saint Laurent Paris."  (Id. ¶ 16.)

On December 10, 2012, Defendant LGI filed an application with the USPTO to register "Saint Laurent" for International Class 9, 14, 18, and 25 goods. (Id. ¶ 12; U.S. Trademark Application Serial No. 85,799,140 (filed Dec. 10, 2012).) The application was published for opposition on January 21, 2014, and Plaintiff filed an opposition on March 20, 2014.  (See U.S.

Trademark Application Serial No. 85,799,140 (filed Dec. 10,
2012); see also ECF No. 50, Kozinn Decl. Ex. E.)[5]

On December 13, 2012, Defendant LGI applied to register
"Saint Laurent Paris" with the USPTO for International Class 9,
14, 18, and 25 goods. (U.S. Trademark Application Serial No.
85,799,160 (filed Dec. 13, 2012).) The application was published
for opposition on November 26, 2013; Plaintiff filed an
opposition on December 19, 2013.  (Id.) Plaintiff opposed all
International Class 25 goods being granted registration.[6] (See

_____

[5] Plaintiff opposed the following International Class 25 goods
being granted a trademark: "Men's, women's clothing, namely,
suits, coats, jackets, pants, shirts, raincoats, tuxedos,
blazers, and three- quarter coats."  (Notice of Opp'n to U.S.
Trademark Application Serial No. 85,799,140 (filed Mar. 20,
2014).)

[6] Specifically, Plaintiff opposed,

> All goods and services in the class [25] . . . namely:
> Men's, women's and children's clothing, namely, suits,
> coats, jackets, pants, shirts, raincoats, sweatsuits,
> underwear, pullovers, knit shirts, and under garments;
> evening wear, namely, evening dresses, evening gowns,
> evening wraps, tuxedos, blazers, and three-quarter
> coats; hosiery, namely, socks and stockings; knitwear
> clothing, namely, sweaters, knitted underwear, and
> knit caps; sportswear, namely, sports shirts, sport
> jerseys, sport pants; clothing accessories, namely,
> suspenders, ties, bow ties, and scarves; belts for
> clothing; gloves; footwear and headwear.

(See Notice of Opp'n to U.S. Trademark Application Serial No.
85,799,160 (filed Dec. 19, 2013).)

Notice of Opp'n to U.S. Trademark Application Serial No.
85,799,160 (filed Dec. 19, 2013).) When opposing both "Saint
Laurent" and "Saint Laurent Paris" being granted registration,
Plaintiff asserted that the applications violated both the 1975
Agreement and the 1982 Agreement and that the trademarks would
result in a likelihood of confusion and trademark dilution.

    B.   Procedural History

    Plaintiff filed this action on September 26, 2013 against
Defendants YSL, Yves Saint Laurent America Holding, Inc., and
Saint Laurent.  Parties filed a Stipulation dismissing the
latter two entities and giving Plaintiff leave to file an
Amended Complaint, which this Court endorsed on December 18,
2013.  (ECF No. 8.) Plaintiff filed an Amended Complaint on
December 23, 2013, which added Defendants Kering, KAI, and LGI
as parties.

    After filing the Amended Complaint, Plaintiff filed a
Motion for a Preliminary Injunction on January 13, 2013, which
was fully submitted on May 7, 2014.  Defendants YSL filed a
Motion to Dismiss on January 30, 2014, which was fully submitted
on March 10, 2014.  Defendant KAI filed a Motion to Dismiss on
March 13, 2014, which was fully submitted on April 8, 2014.

Defendant Kering filed a Motion to Dismiss on April 18, 2014, which was fully submitted on May 12, 2014.  And, Defendant LGI filed a Motion to Dismiss on May 6, 2014, which was fully submitted on May 27, 2014.  Although Defendants Kering and KAI moved to dismiss all Claims of the Amended Complaint, Defendants YSL and LGI moved to dismiss only Claim One. Both trademark opposition proceedings were suspended in April 2014 in light of the instant suit.

The Court denied the Motion for Preliminary Injunction on September 30, 2014.  On October 20, 2014, Plaintiff filed its Motion to Amend/Correct Order on Preliminary Injunction, which was fully submitted on November 17, 2014.

II.  Motions to Dismiss

A.   Legal Standard for a Rule 12(b)(6) Motion to Dismiss

For a complaint to survive dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility," the Supreme Court explained,

10

> [W]hen the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "'merely' consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted). "[I]n keeping with these principles," the Supreme Court stated,

> A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 678.

In considering a motion under Rule 12(b)(6), the Court must accept as true all factual allegations set forth in the Complaint and draw all reasonable inferences in favor of the Plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood

Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, which, like the Complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded.  Nor should a court "accept [as] true a legal conclusion couched as a factual allegation."  Id. at 555.

        "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" or "document[s] 'integral' to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted).  A court may also consider facts "drawn from matters of which we may take judicial notice." Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 149 (2d Cir. 2013). However, though such evidence may be considered, the Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Holloway v. King, 161 F. App'x 122, 124 (2d Cir. 2005)(citation omitted).

B.   Motions to Dismiss Breach of Contract Claim (Count
     One)

Defendants argue that Plaintiff's breach of contract claim
and request for specific performance pursuant to the Agreements
fail because: (1) Defendants, other than LGI, are not bound by
the Agreements;[7] (2) Plaintiff has breached the Agreements, (3)
Defendants' use does not violate the Agreements; and (4)
Plaintiff's filing of the Complaint was unduly delayed and
specific performance is not warranted.

Under New York law,[8] a breach of contract claim is alleged
properly where the plaintiff pleads "(1) the existence of an
agreement, (2) adequate performance of the contract by the
plaintiff, (3) breach of contract by the defendant, and (4)
damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir.
1996); Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC.,
861 F. Supp. 2d 344, 355 (S.D.N.Y. 2012).

---

[7] Plaintiff's Amended Complaint alleges that LGI is the
"successor of all interest and goodwill in the YSL trademarks as
well as the contractual obligations set forth in the 1975
Agreement and 1982 Stipulated Order held by the predecessor YSL
companies." (Am. Compl. ¶ 11.)  Defendant LGI admits that it
"owns the intellectual rights to the YSL trademarks" and does
not move to dismiss on the ground that it is not bound by the
Agreements (LGI Ans. to Am. Compl. ¶ 10; LGI Mot. to Dismiss.)

[8] Parties' briefs assume New York law controls in this diversity
action, and this "implied consent is sufficient to establish
choice of law." Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61
(2d Cir. 2004)(citation and internal ellipses omitted).

In certain circumstances, "[s]pecific performance is an appropriate remedy in a breach of contract claim." Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 348 (S.D.N.Y. 2009); see Sokoloff v. Harriman Estates Dev. Corp., 96 N.Y.2d 409, 415 (2001). Under New York law, "a party can be compelled to perform its contractual obligations if (1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts., No. 12 Civ. 9412, 2014 WL 3368670, at *9 (S.D.N.Y. July 9, 2014). Assuming a breach is proven, "[w]hen specific performance is contemplated by the contract, courts tend to find that irreparable harm would be suffered unless specific performance is granted." Wells Fargo Bank v. Bank of Am., No. 11 Civ. 4062, 2013 WL 372149, at *8 (S.D.N.Y. Jan. 31, 2013)(citing Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 2009)). However, if a party "materially breached the contract . . . , he may not be awarded specific performance." Grace v. Nappa, 46 N.Y.2d 560, 567 (1979); Net2Globe Int'l Inc. v. Time Warner Telecomm. of N.Y., 273 F. Supp. 2d 436, 457 (S.D.N.Y. 2003).

1.    Which Defendants are Bound by the Agreements

Defendants YSL, KAI, and Kering argue that the 1975 Agreement and 1982 Agreement do not bind them.  Defendant LGI does not move to dismiss on this ground.[9]

"It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." Crabtree v. Tristar Auto. Group, Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991); MBIA Ins. Corp. v. Royal Bank of Canada, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) ("[A] a party who is not a signatory to a contract cannot be held liable for breaches of that contract."); Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc., 813 N.Y.S.2d 751, 752 (N.Y. App. Div. 2006).

In general, under New York law, "a parent corporation and its subsidiary are regarded as legally distinct entities and a contract under the corporate name of one is not treated as that of both." Analect LLC v. Fifth Third Bancorp, 380 F. App'x 54, 56 (2d Cir. 2010) (quoting Carte Blanche (Sing.) Pte., Ltd. v. Diners Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir. 1993)); see also United States v. Bestfoods, 524 U.S. 51, 61 (1998); Yankee Gas Serv. v. UGI Utils., 428 F. App'x 18, 20 (2d Cir. 2011) ("[i]t is a general principle of corporate law . . . that a parent

---

[9] See supra note 7.

corporation . . . is not liable for the acts of its subsidiaries.") A parent corporation is liable for the acts of its subsidiary upon a "showing of fraud or complete control" of the subsidiary.  Analect LLC, 380 F. App'x at 57 (citation and internal ellipses omitted). A parent corporation may also be liable under an agency theory.  See Pullman v. Alpha Media Pub., Inc., No. 12-CV-1924, 2013 WL 1290409, at *20 (S.D.N.Y. Jan. 11, 2013) ("To hold a principal liable for the acts of its subsidiaries under agency law, total domination does not need to be proven.  But there must be 'a relationship between the corporation and the cause of action. Not only must an arrangement exist between the two corporations so that one acts on behalf of the other and within the usual agency principles, but the arrangement must be relevant to the plaintiff's claim of wrongdoing.'") (citations omitted).

Additionally, "Under New York law . . . , a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities."  New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 205, 209 (2d Cir. 2006). However, there are certain exceptions:

> [A] buyer of a corporation's assets will be liable as
> its successor if: (1) it expressly or impliedly assumed
> the predecessor's tort liability, (2) there was a
> consolidation or merger of seller and purchaser, (3) the
> purchasing corporation was a mere continuation of the

selling corporation, or (4) the transaction is entered
into fraudulently to escape such obligations.

Id. (citation omitted).

The 1975 Agreement involved Yves Saint Laurent, Inc., Yves
Saint Laurent Men's Clothing, Inc., and Lanvin-Charles of the
Ritz, Inc.  The 1982 Agreement involved Yves Saint Laurent, Inc.
and Charles of the Ritz Group Ltd.[10]  Because Defendants were not
party to the Agreements, Plaintiff must plead privity of
contract between Plaintiff and Defendants.


            a.   Defendant Kering S.A.

    Defendant Kering argues that it is not bound by the
Agreements because, as a parent corporation for Defendants YSL,
LGI, and KAI, it is not liable for the acts of its subsidiaries.
The Court agrees that Defendant Kering cannot be held liable
solely on the basis of its parent corporation relationship with
the other Defendants. Nor has Plaintiff alleged facts to support
liability based on an agency theory.  Plaintiff would need to
plead one of the exceptions, fraud or domination, to state a
claim against Kering.

    Plaintiff argues that Defendant Kering is bound by the
Agreements because it was a purchaser of the Predecessor YSL

--------

[10] The Court will refer to the original signatories to the two
Agreements as the "Predecessor YSL Companies."

Companies and assumed its liabilities.  Specifically, Plaintiff
alleges, upon information and belief, that the PPR Group,
recently renamed Kering S.A., purchased the Predecessor YSL
Companies in or around 1999, and in doing so, "acquired the
entirety of the assets, liabilities and obligations of the
predecessor YSL Companies through one or more corporate
transactions . . . and as such has assumed all rights and
obligations of said YSL Companies," including the two
Agreements.  (Am. Compl. ¶¶ 14, 29.)  Although such legal
conclusions are generally insufficient under the Iqbal and
Twombly pleading standards, the Second Circuit has held that a
plaintiff may survive a motion to dismiss by "pleading facts
alleged upon information and belief where the facts are
peculiarly within the possession and control of the defendant."
Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)
(internal quotation marks omitted); see also Cain v. Simon &
Schuster, Inc., No. 11 Civ. 4460, 2012 WL 2574747, at *2
(S.D.N.Y. July 3, 2012).  The Court's records indicate that the
parties came to some agreement about the appropriate corporate
entities to be sued (ECF No. 8), which resulted in the dismissal
and addition of named defendants in the Amended Complaint.
However, it appears that the Parties' subsequent efforts to
agree upon the nature of the corporate relationships were less

successful.[11]  Here, Plaintiff argues that the Complaint alleges

all publicly available facts and that any additional facts

regarding assumption of liabilities are "by their very nature

uniquely and exclusively in the possession and control of" the

Defendants. (Plf. Opp. to YSL Mot. to Dismiss 13-14.)  Thus,

taking as true all factual allegations set forth in the Amended

Complaint and drawing reasonable inferences in favor of

Plaintiff, PPR's assumption of those liabilities would suffice

to bind Kering.  Plaintiff has plead sufficient facts to support

Kering's privity of contract to survive dismissal at this stage.


b.    Kering Americas, Inc.

Plaintiff claims that because Defendant KAI is a subsidiary

of Defendant Kering, "it is highly likely that . . . [KAI] also

assumed the rights and obligations relating to the

[Agreements]."  (Pl.'s Opp'n to Def.'s KAI Mot. Dismiss 12.)

Besides the legal conclusion that, "each Defendant has acquired

. . . [the] obligations set forth in the [Agreements]," (Am.

---

[11] (See Order on Mot. for Prelim. Injunc. 7-8.) The Court
declines to conduct an extensive analysis of the scope and
substance of the communications between the Parties, both before
and after the filing of the Amended Complaint, related to the
corporate structure, particularly in light of the fact that
there was a substitution of defense counsel during that period.
(Plf. Opp. to YSL Mot. to Dismiss, Lane Decl., Ex. A; see also
Plf. Opp. to KAI Mot. to Dismiss 2; Plf. Reply in Supp. of Mot.
for Prelim. Injunc. 11.)

Compl. ¶ 18), Plaintiff does not allege that Defendant KAI has
any relationship to the Predecessor YSL Companies, the current
YSL Defendants, or LGI.  Plaintiff's speculative allegation that
KAI is bound through its relationship with Kering cannot
withstand Iqbal's pleading requirements.

Because Plaintiff failed to allege sufficient facts that
Defendant KAI is bound by the Agreements, Defendant KAI's Motion
to Dismiss Claim One is GRANTED without prejudice.

> c.   Defendants Yves Saint Laurent S.A.S.
>      Defendant Yves Saint Laurent America, Inc.

As to Defendants YSL, again, the main allegation specific
to the issue of privity of contract is that "each Defendant has
acquired, by operation of law and/or as a matter of equity, the
rights and obligations set forth in the 1975 Agreement and 1982
Stipulated Order." (Am. Compl. ¶ 18.) However, Plaintiff also
alleges, and Defendants YSL admit, that Defendants YSL "promote
and/or sell men's and women's clothing and related goods and
accessories that are the subject of this action." (Am. Compl. ¶
19; YSL Ans. to Am. Compl. ¶ 19.)  Taking Plaintiff's facts as
true and making reasonable inferences in Plaintiff's favor, it
is plausible that Defendants YSL's business is a continuation of
the Predecessor YSL Companies', which would bind them to the
Agreements.  Again, because information about the exact nature

of the corporate transactions and relationships is in the hands

of Defendants, Plaintiff has plead sufficient facts to support

the YSL Defendants' privity of contract at this stage.[12]


      2.  Plaintiff's Purported Breaches of the Agreements

Defendants contend that Saint Laurie's claims for breach of

contract and specific performance must be dismissed because

Plaintiff has breached the 1975 Agreement and 1982 Agreement.

Specifically, Defendants assert that Plaintiff's website

violates the 1975 Agreement because Plaintiff advertises itself

as "Saint Laurie" and "Saint Laurie—Merchant Tailors" without a

prominent display of "Ltd."[13] In the 1975 Agreement, Saint Laurie

agreed,

---

[12] The Court will not consider Defendants YSL's frivolous and
glib arguments that "there is no 'case or controversy' . . . on
the contract claim," so Plaintiff "lacks standing to pursue it
and the Court lacks subject matter jurisdiction" under Rule
12(b)(1).  (Defs. YSL's Mot. to Dismiss 20.) In making this
argument, Defendants YSL cite to one Northern District of Texas
case that is contrary to well-established Second Circuit law.
Compare Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171
(2d Cir. 2006) (explaining when resolving a Rule 12(b)(1) motion
"the court must take all facts alleged in the complaint as true
and draw all reasonable inferences in favor of plaintiff"
(citation omitted)) with Defs. YSL's Reply 7 ("[T]he plaintiff
is not entitled to inferences drawn in its favor.").  This Court
admonishes Defendants YSL, reminding counsel only to advance
arguments that have a reasonable basis in applicable law or
fact.

[13] The Court takes judicial notice of Saint Laurie's website.
See Magnoni v. Smith & Laquercia, LLP, 701 F. Supp. 2d 497, 501

> [A]dvertising and/or labelling by SL in connection with
> French styled or modelled clothing will be accompanied
> by a prominent display of the name 'Saint Laurie Ltd.'
> and will be done in such a manner so as not to be
> misleading as to the origin of the goods and not to be
> confusingly similar to Yves Saint Laurent and/or Saint
> Laurent Rive Gauche.

(1975 Agreement ¶ 9.) Defendants do not contend that Plaintiff's website uses "Saint Laurie" in connection with French styled or modelled clothing. Rather, Defendants assert that the mere use of "Saint Laurie" constitutes a breach of the 1975 Agreement.

Under New York law, "words and phrases should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (citations and quotations omitted). Therefore,

> an interpretation of a contract that has the effect of
> rendering at least one clause superfluous or meaningless

---

(S.D.N.Y. 2010); see also Patsy's Italian Rest., Inc. v. Banas, 575 F. Supp. 2d 427, 443 n. 18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."), aff'd, 658 F.3d 254 (2d Cir. 2011); ECF No. 23, Normand Decl. Exs. 27-28. In addition, the authenticity of the website and its printouts have not been challenged. The Court, however, will not take judicial notice of Andrew Kozzin's Declaration, (ECF No. 36, Kozzin Decl. ¶¶ 10-18), which attempts to explain the meaning of "French styled or modeled clothing." Novie v. Vill. of Montebello, No. 10 Civ. 9436, 2012 WL 3542222, at *9 (S.D.N.Y. Aug. 16, 2012) (collecting cases finding that "it is improper for a court to consider declarations and affidavits on a motion to dismiss").

> . . . is not preferred and will be avoided if possible.
> Rather, an interpretation that gives a reasonable and
> effective meaning to all terms of a contract is generally
> preferred to one that leaves a part unreasonable or of
> no effect.

Galli v. Metz, 973 F.2d 145, 149 (2d Cir. 1992) (citations and
quotations omitted); LaSalle, 424 F.3d at 206.

Defendants' interpretation would render meaningless the
limiting language of Paragraph 9 of the 1975 Agreement, "in
connection with French styled or modelled clothing."
Defendants' reading would also render Paragraph 4 of the 1982
Agreement meaningless as those parties "consent[ed] to the use .
. . of 'SAINT LAURIE' as a trademark or trade name on or in
connection with any and all goods or services and advertising
therefore, except perfumery and cosmetics." (1982 Agreement ¶
4.) Finally, Defendants' interpretation, in seeking to ignore
the limiting language and prevent Plaintiff from ever using
"Saint Laurie" without "Ltd." cannot be made in good faith
without calling into question Defendants' use of "Saint Laurent"
with other words or alone in circumstances similarly provided
for in the Agreements.  Accordingly, Defendants have not
demonstrated that Plaintiff's website constitutes a breach of
the 1975 Agreement.

Additionally, Defendant LGI asserts that Plaintiff breached
the 1982 Agreement when it filed an overly broad opposition to

the USPTO regarding the registration application of "Saint
Laurent" for International Class 9, 14, 18, and 25 goods.[14] In
the 1982 Agreement, Plaintiff agreed to not "oppose or petition
to cancel the registration of 'SAINT LAURENT' based on the use
of 'SAINT LAURENT' as permitted" in the Agreement.  (1982
Agreement ¶ 3.) YSL could use the trade name "Saint Laurent"
except "in connection with men's clothing to the extent
restricted by the [1975 Agreement] or on or in connection with
women's suits, sport coats, overcoats, raincoats, or vests."
(1982 Agreement ¶ 2.)

     When Plaintiff learned of the application for "Saint
Laurent," it filed an opposition to only International Class 25
goods being granted registration.  Plaintiff did not oppose the
registration of International Class 9, 14, and 18 goods.
Nonetheless, Defendant LGI contends this opposition breached the
1982 Agreement because it was overly broad.  In addition to
opposing men and women's clothing, Plaintiff opposed the
registration of, inter alia, children's clothing, hosiery,
evening gowns, pullovers, sweaters, knit caps, belts, and

_____

[14] Defendant LGI does not assert that Plaintiff's opposition to
the "Saint Laurent Paris" application breached the 1982
Agreement.  It bears noting that, although Defendant LGI was
obligated to notify Plaintiff of any application to register
"Saint Laurent" with the USPTO, Plaintiff avers that Defendant
LGI did not do so regarding the "Saint Laurent" and "Saint
Laurent Paris" applications.

footwear.  Defendants' moving papers, however, are devoid of any
analogous case law supporting their claim that Plaintiff's
actions would preclude Plaintiff's breach of contract claim.
Accordingly, this argument is not grounds for granting a motion
to dismiss.

>   3.   Defendants' Use of "Saint Laurent Paris" and
>        "Saint Laurent" Alone

Defendants assert that the use of "Saint Laurent Paris" is
not, as a matter of law, a breach of the Agreements.  As noted
above, Paragraph 5 of the 1975 Agreement provides:

> [I]n advertisements and/or labelling . . . pertaining
> to men's clothing sold under the trademarks Yves Saint
> Laurent or Saint Laurent Rive Gauche . . . , the words
> "Saint Laurent" will either be preceded by the word
> "Yves" (YSLMC) in equivalent size or followed by the
> words "rive gauche" (YSLINC) either directly after or
> immediately below. . . . Neither YSLMC nor YSLINC
> shall sell or advertise men's clothing under the trade
> name "Saint Laurent" alone.

(1975 Agreement ¶ 5.) Pursuant to the 1982 Agreement, the
Predecessor YSL Companies further agreed:

> not to use, or license the use of "Saint Laurent" as a
> trademark or trade name on or in connection with men's
> clothing to the extent restricted by the [1975
> Agreement] or on or in connection with women's suits,
> sport coats, overcoats, raincoats, and vests.

(1982 Agreement ¶ 3.)  Additionally, Saint Laurie "consent[ed]
to the use by [Predecessor YSL Companies] . . . of 'Saint
Laurent' as a trademark or trade name on or in connection with

25

any and all goods and services and advertising thereof, except for men's clothing to the extent restricted by the [1975 Agreement] and except women's suits, sport coats, overcoats, raincoats, and vests." (Id. ¶ 3.)

Defendants assert that Paragraph 5 of the 1975 Agreement does not prohibit YSL from selling men's clothing bearing trade names other than "Yves Saint Laurent" or "Saint Laurent Rive Gauche." Defendants claim that prohibiting YSL from using any trademarks other than "Yves Saint Laurent" or "Saint Laurent Rive Gauche" would render the second sentence meaningless. They also claim such a reading would be an unreasonable reading because it would "[freeze] YSL in time, preventing it from updating its image and style in the fast-changing world of fashion." (Def. YSL Mot. to Dismiss 22.) The Court agrees that Defendants are not limited to using "Yves" or "Rive Gauche" with "Saint Laurent" for all men's clothing for all time. Instead, the Court reads this provision to mean that Defendants must use Yves preceding or Rive Gauche following "Saint Laurent" for men's clothing sold under those two trademarks, but are permitted to sell men's clothing under other trademarks, so long as such other trademarks do not use "Saint Laurent" alone.

The 1982 Agreement provides support for this reading, and clarifies the requirements as they pertain both to men's

clothing already covered by the 1975 Agreement and to certain additional types of women's clothing.  The 1982 Agreement contains no similar language requiring that YSL use particular words in conjunction with "Saint Laurent." [15]  The court infers that the Parties intended not to include such limiting words. See Quadrant Structured Prods. Co. v. Vertin, 23 N.Y.3d 549, 560 (2014) ("[W]here there is ambiguity, if parties to a contract omit terms——particularly, terms that are readily found in other, similar contracts——the inescapable conclusion is that the parties intended the omission. The maxim expressio unius est exclusio alterius, as used in the interpretation of contracts, supports precisely this conclusion.")  Instead, the 1982 Agreement prohibits the use of "Saint Laurent" as a trademark

---

[15] In the briefing on the Motions to Dismiss, Motion for Preliminary Injunction, and Motion to Amend, Plaintiff claims, with varying levels of equivocation, that YSL was required to use "Yves" with the specified women's clothing. (Compare Plf. Opp. to Mot. to Dismiss 15 (highlighting the "clear restriction in the Agreements against usage of 'Saint Laurent' unless preceded by the word "Yves" for advertising of men's and women's clothing products") and Plf. Mot. for Prelim. Injunc. 12-13 (same) with Plf. Mot. to Amend 19 ("The 1982 Agreement does not specify . . . that the prohibited use of 'Saint Laurent' is limited to its use "alone" on specified items of women's clothing.  It also does not specify whether or not the use of 'Saint Laurent' in combination with other words following it was prohibited. However, the 1982 Agreement incorporated the terms of the prior 1975 Agreement . . . [and] it is therefore reasonable to infer that [the 'Yves'] limitation was also applicable to going forward uses for the items of women's clothing specified.")).

for certain items, and includes a provision not found in the earlier 1975 Agreement in which Saint Laurie explicitly consents to the use of "Saint Laurent" alone for all other goods and services not specified in the two Agreements. Thus, the Court reads the 1982 Agreement to prevent Defendants from registering or using the trademark or trade name "Saint Laurent" alone for men's clothing and for the specified types of women's clothing but not requiring that YSL use any particular words in connection with other potential trademarks.

Plaintiff alleges that Defendants have attempted to register the trademark "Saint Laurent" alone for categories covering the restricted clothing items, and have used and directed others to use "Saint Laurent" alone.  Taking Plaintiff's allegations as true and making reasonable inferences in favor of Plaintiff, Plaintiff has stated a claim for breach of the Agreements and thus dismissal on this basis is not warranted.

4.    Plaintiff's Purported Delay in Bringing the Suit

Defendants next argue that, because Plaintiff delayed in bringing the instant suit, it cannot seek specific performance under the Agreements.[16] In denying the Motion for Preliminary

---

[16] Defendants also contend that the claim for specific performance should be dismissed because Plaintiff fails to

28

Injunction, this Court found that Plaintiff was not unduly
delayed in filing its Motion for Preliminary Injunction. (See
Order on Mot. for Prelim. Injunc., ECF No. 80 at 12.) Although
unreasonable delay may preclude specific performance, all of the
cases to which Defendants cite in their Motions to Dismiss
discuss delay in the context of deciding preliminary injunction
or summary judgment motions.  The Court notes that the analyses
on a motion to dismiss and a motion for a preliminary injunction
are not necessarily the same.  See Citibank, N.A. v. Citytrust,
756 F.2d 273, 276 (2d Cir. 1985) ("Although a particular period
of delay may not rise to the level of laches and thereby bar a
permanent injunction, it may still indicate an absence of the
kind of irreparable harm required to support a preliminary
injunction."); Rockland Exposition, Inc. v. Alliance of Auto.
Serv. Providers of N.J., No. 08-CV-7069, 2009 WL 1154094, at *11

---

allege that it performed its obligations under the contract and
is ready and willing to perform its obligations under the
contract. (See YSL Mot. to Dismiss 13, 17; LGI Mot. to Dismiss
2.) They cite to no analogous case law supporting dismissal on
those bases, instead citing to one case that was dismissed
because the plaintiff failed "to allege the existence of a
specific contract." Petitt v. Celebrity Cruises, Inc., 153 F.
Supp. 2d 240, 263 n.27 (S.D.N.Y. 2001).  The remaining cited
cases were dismissed either after trial or at summary judgment
and shall not be considered.  At this stage, where Plaintiff has
pleaded "enough facts to state a claim to relief that is
plausible on its face," Twombly, 550 U.S. at 570, and
Defendants' assertions are devoid of analogous case law, the
Court will not consider Defendants' argument.

(S.D.N.Y. Mar. 19, 2009) ("To succeed on the equitable defense
of laches, a defendant must establish both plaintiff's
unreasonable lack of diligence under the circumstances ... as
well as prejudice from such a delay. In determining whether such
delay is fatal in a suit for specific performance regard must
always be had to the peculiar circumstances of each case."
(citations and internal quotation marks omitted)).

However, there is no reason for the Court to depart from
its finding on the Motion for Preliminary Injunction that the
delay was not unreasonable.  Defendants' cited cases, with the
exception of Citibank, 756 F.2d at 277 (finding a preliminary
injunction was improper due to the plaintiff's delay), involved
delays far greater than the purported delay here——even if the
Court credited Defendants' sequence of events.[17]  The delay is
not a grounds for dismissing Plaintiff's claim for specific
performance on a motion to dismiss.

---

[17] One of Defendants' cited cases involved a two-year delay but
with a "period attributable to unexplained inaction" of eight or
nine months.  EMF Gen. Contr. Corp. v. Bisbee, 6 A.D.3d 45, 53
(N.Y. App. Div. 2004).  In Bisbee, the Appellate Division
reversed the lower court's dismissal after trial of plaintiff's
specific performance claim, holding that the delay could be
explained by normal business practices and "was neither so long
nor so 'unconscionable'" so as to deny access to specific
performance.  Id. at 53, 56.

C.    Defendants Kering and KAI's Motion to Dismiss
      Trademark and Unfair Competition Claims (Counts Two
      Through Eight)

Defendants Kering and KAI move to dismiss Counts Two

through Eight of the Amended Complaint; Defendants LGI and YSL

do not.  Plaintiff alleges trademark infringement and unfair

competition under state and federal law. Defendants Kering and

KAI argue that Plaintiff does not state a claim because

Plaintiff failed to plead facts regarding the corporate

structure sufficient to hold them liable for their affiliates'

actions.  Defendants Kering and KAI also argue that Plaintiff

has not alleged any specific facts regarding those Defendants'

actions that support liability for the infringement and unfair

competition under any other theory of liability.


          1.  Legal Standards for Trademark and Unfair
              Competition Claims

Plaintiff alleges violations of the Lanham Act for

trademark infringement, false designation of origin, and

trademark dilution.  The Lanham Act provides a cause of action

against:

> [a]ny person who, on or in connection with any goods or
> services . . . uses in commerce any word, term, name,
> symbol, or device, or any combination thereof, or any
> false designation of origin . . . which . . . is likely
> to cause confusion, or to cause mistake, or to deceive
> as to the affiliation, connection, or association of
> such person with another person, or as to the origin,

sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1).  The Lanham Act also provides a cause of action and injunctive relief as a remedy for violation, where "use of a mark or trade name . . . is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."  15 U.S.C. § 1125(c).  Although actual confusion is not required to succeed, Plaintiff must show a likelihood of confusion.[18]

Plaintiff also alleges violations of New York State law for trademark infringement, unfair competition, trademark dilution, and unlawful deceptive acts and practices.  As with Plaintiff's federal law claims, to make out a common law claim for trademark infringement or unfair competition under New

---

[18] In analyzing likelihood of confusion, a court may consider a variety of factors, including the eight set forth in <u>Polaroid Corp v. Polarad Elecs. Corp.</u>, 287 F.2d 492 (2d. Cir. 1961):

> (1) the strength of the plaintiff's trade dress, (2) the similarity between the two trade dress, (3) the proximity of the products in the marketplace, (4) the likelihood that the prior owner will bridge the gap between the products, (5) evidence of actual confusion, (6) the defendant's bad faith, (7) the quality of defendant's product, and (8) the sophistication of the relevant consumer group.

<u>Fun-Damental Too, Ltd v. Gemmy Indus. Corp.</u>, 111 F.3d 993, 1002-03 (2d Cir. 1997).

York law, Plaintiff must allege that Defendants' use of its trademark is likely to lead to confusion, mistake, or deception of customers. <u>Allied Maint. Corp. v. Allied Mech. Trades, Inc.</u>, 42 N.Y.2d 538, 543 (1977).  New York's common law unfair competition encompasses the "principle that one may not misappropriate the results of the skill, expenditures and labors" of another, even if the two parties are not in direct competition with each other. <u>ITC Ltd. v. Punchgini, Inc.</u>, 9 N.Y.3d 467, 477 (2007).  Misappropriation theory includes protection of "commercial advantage" or "goodwill," where "consumers of the good or service provided under a certain mark by a [defendant] . . . primarily associate the mark with the [plaintiff]."  <u>Id.</u> at 479.[19]

Plaintiff also alleges violations of New York General Business Law §§ 360(l) and 349.  Section 360 provides injunctive relief for trademark dilution, defined as "injury

---

[19] Factors to be considered in the determination of whether consumers associate the mark with plaintiff include:
> [whether] defendant intentionally associated its goods with those of the [plaintiff] in the minds of the public, such as public statements or advertising stating or implying a connection with the [plaintiff]; direct evidence, such as consumer surveys, indicating that consumers of defendant's goods or services believe them to be associated with the plaintiff; and evidence of actual overlap between customers of the [defendant] and the [plaintiff]."

<u>Id.</u> at 480.

to business reputation or of dilution of the distinctive
quality of a mark or trade name." Section 349 provides a
cause of action for unlawful and deceptive acts and practices,
and allows for up to treble damages for willful or knowing
violations. <u>Id.</u>

### 2. Application to Defendants Kering and KAI

As with Count One, Defendants Kering and KAI argue that
Plaintiff did not plead sufficiently their corporate
relationships to form the basis of liability for Counts Two
through Eight. As to Defendant Kering, the corporate structure
was plead sufficiently to overcome this argument; as to KAI, it
was not. <u>See</u> <u>supra</u> at II.B.1.a. and II.B.1.b. <u>See also</u>
<u>Precision Assocs., Inc. v. Panalpina World Transp. (Holding)</u>
<u>Ltd.</u>, No. 08 –CV 42, 2011 WL 7053807, at *15 (E.D.N.Y. Jan. 4,
2011) ("The argument that the grouped defendants joined the
alleged conspiracies through their corporate affiliation is
precisely the sort of 'legal conclusion couched as a factual
allegation' that <u>Twombly</u> and <u>Iqbal</u> deemed insufficient to state
a claim.")

Beyond the corporate structure argument, the Court agrees
that Plaintiff has not set forth sufficient facts regarding the
particular actions attributable to and claims against each of

Defendant; instead Plaintiff refers to Defendants collectively throughout.  This is problematic because it does not give Defendants sufficient notice of their individual liability. <u>See</u> <u>Am. Sales Co., Inc. v. AstraZeneca AB</u>, No. 10 Civ. 6062, 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011) (stating that "[a] complaint should offer 'specification' as to the 'particular activities by any particular defendant'" and noting that Rule 8(a) "'requires that a complaint against multiple defendants indicate clearly the defendants against which relief is sought and the basis upon which relief is sought against the particular defendants.'")(quoting <u>In re Elevator Antitrust Litig.,</u> 502 F.3d 47, 50 (2d Cir. 2007); <u>Martin v. City of N.Y.,</u> 07 Civ. 7384, 2008 WL 1826483, *1 (S.D.N.Y. Apr. 23, 2008)). It is possible that this information is particularly in the possession of Defendants, and that such information will only come to light through discovery. However, Plaintiff is still required to allege such facts upon information and belief, which it has not done here.  <u>Arista Records</u>, 604 F.3d at 120.  Only Defendants Kering and KAI have challenged the Amended Complaint on this basis.  As to those Defendants, Claims Two through Eight cannot survive dismissal at this stage.

Accordingly, Defendants Kering and KAI's Motion to Dismiss Claims Two through Eight is GRANTED without prejudice.

D.   Leave to Replead

When a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. Hutchinson v. Deusche Bank Secs. Inc., 647 F.3d 479, 490-91 (2d Cir. 2011).

Plaintiff may file a Second Amended Complaint that presents adequate allegations regarding the corporate relationships and liabilities to the Agreements of the various Defendants, as well as specific facts supporting liability of each Defendant as to Counts Two through Eight.

III. Plaintiff's Motion to Amend/Correct Order on Motion for Preliminary Injunction

Plaintiff moves for an amendment or correction to the September 30, 2014 Order on Motion for Preliminary Injunction on three bases: (1) the Court misinterpreted the terms and overall context of the Agreements; (2) the Court overlooked facts on the record demonstrating Defendants' illegal conduct; and (3) the Court overlooked or misapprehended Plaintiff's irreparable harm argument. Defendants filed a joint Opposition challenging all of Plaintiff's arguments.

A.   Legal Standard for Rule 52(b) and 59(e) Motions to
     Amend or Correct a Judgment

The standard for granting a motion to reconsider "is
strict, and reconsideration will generally be denied unless the
moving party can point to controlling decisions or data that the
court overlooked——matters, in other words, that might reasonably
be expected to alter the conclusion reached by the court."
Shrader v. CSC Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995);
see also Range Road Music, Inc. v. Music Sales Corp., 90
F.Supp.2d 390, 392 (S.D.N.Y.2000) (holding that a motion for
reconsideration "is appropriate only where the movant
demonstrates that the Court has overlooked controlling decisions
or factual matters that were put before it on the underlying
motion ... and which, had they been considered, might have
reasonably altered the result before the court") (internal
quotation marks omitted).  "The major grounds justifying
reconsideration are 'an intervening change of controlling law,
the availability of new evidence, or the need to correct a clear
error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd.
v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)
(citation omitted).

Furthermore, "[i]t is well-settled that Rule 59 is not a
vehicle for relitigating old issues, presenting the case under
new theories, securing a rehearing on the merits, or otherwise

37

taking a 'second bite at the apple.'" <u>Analytical Surveys, Inc.</u>
<u>v. Tonga Partners, L.P.</u>, 684 F.3d 36, 52 (2d Cir. 2012), <u>as</u>
<u>amended</u> (July 13, 2012) (citation omitted).  A motion for
reconsideration is not one in which a party may reargue "those
issues already considered when a party does not like the way the
original motion was resolved." <u>In re Houbigant, Inc.</u>, 914 F.
Supp. 997, 1001 (S.D.N.Y. 1996). Moreover, the parties "may not
address facts, issues or arguments not previously presented to
the Court," <u>U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,</u>
<u>Ltd.</u>, 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (citations omitted),
because a motion to reconsider should never act "as a substitute
for appealing from a final judgment." <u>Bonnie & Co. Fashions,</u>
<u>Inc. v. Bankers Trust Co.</u>, 170 F.R.D. 111, 113 (S.D.N.Y. 1997)
(citation omitted).

     B.   Interpretation of the Agreements

Plaintiff challenges the Court's finding on the likelihood
of success on the merits, asserting that the Court's
interpretation of the Agreements was incomplete and requires
amendment. (Plf. Mot. to Amend 16.)  The Court reiterates that
the absence of irreparable harm, discussed <u>infra</u>, is
dispositive, and thus analysis of the other prongs of the
preliminary injunction standard is unnecessary at this juncture.

<u>Grand River Enterp. Six Nations v. Pryor</u>, 481 F.3d 60, 68 (2d. Cir. 2007).  However, insofar as the Court further analyzed the Agreements today to determine whether Plaintiff plead sufficient facts to state a claim for breach of contract, <u>supra</u> at II.B.3., that discussion is incorporated here.

While Plaintiff has stated a claim for breach of contract, Plaintiff has not met the more stringent standard of a clear showing of likelihood of success on the merits required for a preliminary injunction. <u>Sussman v. Crawford</u>, 488 F.3d 136, 139 (2d Cir. 2007).  On a motion for a preliminary injunction, the Court need not, and does not here, take Plaintiff's factual allegations as true.  <u>See, e.g., Lawrence v. Town of Brookhaven Dep't of Hous., Cmty. Dev. & Intergov. Affairs</u>, No. 07-CV-2243, 2007 WL 4591845, at *13 (E.D.N.Y. Dec. 26, 2007) ("[U]nlike a preliminary injunction motion, dismissal pursuant to Rule 12(b)(6) is not based on whether Plaintiff is likely to prevail, and all reasonable inferences must be viewed in a light most favorable to Plaintiff.").  While Plaintiff may make out a breach of contract claim after more discovery in this case, neither Plaintiff's evidence on its original motion nor the "new" evidence it presents on its Motion to Amend makes the clear showing required on a motion for preliminary injunction.

C.    Defendants' Use of "Saint Laurent" Alone

In its Motion to Amend, Plaintiff argues that the Court overlooked facts that indicate Defendants were in breach and therefore that Plaintiff demonstrated a likelihood of success on the merits.  Plaintiff seeks to capitalize on the Court's interpretations of the Agreements, drawing attention to specific evidence that Defendants use "Saint Laurent" alone.  This evidence includes online articles indicating that YSL allegedly directed the press to refer to the brand as "Saint Laurent," and Defendant LGI's application to register the trademark "Saint Laurent" alone in International Class 25. (Plf. Mot. to Amend 9-10.)  Plaintiff also highlights "further proof" of Defendants' alleged unauthorized use, specifically the use of "Saint Laurent" alone on the YSL website.  (Id. at 11-12.)

None of this evidence changes the Court's determination as to the appropriateness of a preliminary injunction.  Plaintiff seeks to relitigate arguments and evidence that the Court considered and rejected.  YSL's website cannot be considered newly discovered evidence, as it was available to Plaintiff at the time of the filing of the Amended Complaint and original Motion for Preliminary Injunction; indeed, Plaintiff referenced the website in the Amended Complaint, and Defendants Kering, KAI, and LGI attached screenshots of the website to their

Opposition to the Motion for Preliminary Injunction.  (<u>See</u> Am. Compl. ¶ 5; KAI Opp. to Mot. for Prelim. Injunc. 7, Exs. 7-10.) Because the Court's interpretation of the Agreements limits the use of "Saint Laurent" alone for certain products under certain trademarks but allows it for others, whether YSL's website constitutes a breach is a question of fact, and Plaintiff has not made the clear showing required for a preliminary injunction.

With respect to the online articles, the 1982 Agreement unequivocally protects the Predecessor YSL Companies from liability "should any third party including . . . any newspaper, magazine, or other publication or media use 'Saint Laurent' on or in connection with" specified categories of goods.  (1982 Agreement ¶ 6.)  Thus, the articles alone, without evidence corroborating the alleged statements contained within them, is of little probative value here.


    D.   Irreparable Harm

    Plaintiff contends that the Court misapprehended its irreparable harm argument, taking issue with the Court's analysis of irreparable harm in terms of whether there was trademark confusion or loss of goodwill even though the preliminary injunction was sought based on the contract claims.

Plaintiff asserts that "[a]n injunction motion based on the breach of a settlement agreement is distinct from a motion based on federal or state infringement or unfair competition claims" and that under well-established law "a movant is not required to show actual or likely confusion to succeed on the irreparable harm issue where a specific performance remedy for breach is contained in the settlement agreement." (Plf. Mot. to Amend 7.) Plaintiff also points to "additional" authority it "discovered" after the filing of the Motion for Preliminary Injunction that it claims further supports its position. (Id. at 14-15.)

However, the Court's analysis was appropriate because Plaintiff itself framed its irreparable harm argument in terms of trademark infringement.[20] As explained below, in the absence of a clear showing of breach, Plaintiff was required to demonstrate irreparable harm.  Plaintiff failed to do so, and thus the preliminary injunction was not warranted.  Those findings remain untouched.

---

[20] In its Motion for Preliminary Injunction, Plaintiff described the "immediate and irreparable harm" as "the relevant market . . . becom[ing] swamped" and the "potential damage to Saint Laurie's goodwill and business generally." (Plf. Mot. for Prelim. Injunc. 15-16.) Plaintiff now claims that it raised those alleged harms to "highlight the need to invoke the specific performance remedy in order to stop the very conduct constituting the breach." (Plf. Mot. to Amend 13, n.3.)

Plaintiff's argument that the Court misconstrued or overlooked relevant legal authority in analyzing Plaintiff's irreparable harm argument is unavailing. (Id. at 7.)  In eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), the Supreme Court held that a plaintiff seeking a permanent injunction under the Patent Act must fulfill the "traditional four-factor framework" governing injunctive relief by making a clear showing:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id. at 391.  In interpreting eBay, the Second Circuit has explained,

> [i]n the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable . . . because 'to prove the loss of sales due to infringement is . . . notoriously difficult.' . . . After eBay, however, courts must not simply presume irreparable harm.

Salinger v. Colting, 607 F.3d 68, 81-82 (2d Cir. 2010).  Courts within this Circuit have extended these principles to trademark and breach of contract cases.  See, e.g., NYP Holdings v. New York Post Pub. Inc., No. 14-CV-8310 VM, 2014 WL 6603989, at *11 (S.D.N.Y. Nov. 17, 2014) ("[A]lthough irreparable harm may not be presumed upon a showing of a likelihood of success,

43

irreparable harm exists in a trademark case when the party
seeking the injunction shows that it will lose control over the
reputation of its trademark. . . . Thus, it will often be the
case that a party's demonstration of a likelihood of success on
a trademark claim will also show a threat of irreparable harm.")
(citing eBay and Salinger) (internal alterations omitted); Marks
Org., Inc. v. Joles, 784 F. Supp. 2d 322, 327 n.1, 334 (S.D.N.Y.
2011) (applying Salinger to trademark claim); U.S. Polo Ass'n,
Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 539–40
(S.D.N.Y. 2011) (same); FXDirectDealer, LLC v. Abadi, No. 12
Civ. 1796, 2012 WL 1155139, at *3 (S.D.N.Y. Apr. 5, 2012)
(applying Salinger to contract claim).

Plaintiff relies primarily on two cases to support its
contention that it need not have made a showing of irreparable
harm where the contract provides for specific performance in the
event of breach. However, the cited cases predate eBay and
Salinger and, in any case, deal exclusively with situations in
which the plaintiff has already proven conduct that would
constitute a breach of contract. See Sterling Drug Inc. v.
Bayer AG, 792 F. Supp. 1357, 1375 (S.D.N.Y. 1992) aff'd in part,
remanded in part, 14 F.3d 733 (2d Cir. 1994) (court denied
preliminary injunction, but issued injunction after trial proved
trademark infringement, noting "even if [plaintiff]'s trademark

44

rights were not violated, injunctive relief would be proper here because defendants' conduct violated its contractual obligations"); Montblanc-Simplo v. Aurora Due S.r.L., 363 F. Supp. 2d 467 (E.D.N.Y. 2005) (finding no trademark infringement but awarding nominal damages for breach of contract).   Although Plaintiff is correct that those cases support the proposition that Plaintiff need not prove trademark infringement or unfair competition in order to succeed on its contract claim, Plaintiff must still prove that Defendants breached to be entitled to specific performance under the Agreements.  See Baker's Aid, a Div. of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co., 830 F.2d 13, 16 (2d Cir. 1987) ("[T]he contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate."); see also In re M.B. Int'l W.W.L., No. 12 CIV. 4945, 2012 WL 3195761, at *12 (S.D.N.Y. Aug. 6, 2012) ("Court may consider [contract provision] as an admission by [defendant] that any violation of [the contract] will cause irreparable harm, but the Court remains obliged to make an independent determination as to whether injunctive relief is appropriate.")

     Plaintiff's "new" authority does not alter the Court's conclusion.  All three of Plaintiff's cited cases come from courts outside of the Second Circuit and thus are not

dispositive.  Further, two of the three cases were decided in
2009, well before the filing of the original Motion for
Preliminary Injunction.  <u>See</u> <u>Am. Impex Corp. v. Int'l Ace Tex,</u>
<u>Inc.</u>, No. CV 09-7082, 2009 WL 3963791, at *3 (C.D. Cal. Nov. 16,
2009); <u>LNB Bancorp, Inc. v. Osborne</u>, No. 1:09-CV-00643, 2009 WL
936957, at *4 (N.D. Ohio Apr. 3, 2009).  Plaintiff provides no
reason why the Court should consider them at this late stage.
Only <u>Mylan Inc. v. Smithkline Beecham Corp.</u>, 2014 WL 3519102
(D.N.J. July 16, 2014) was decided after Plaintiff's original
motion.  However, it does not represent a change in the
controlling law of this case.  Furthermore, the facts of <u>Mylan</u>
are inapposite to the instant case because there, like in
<u>Sterling Drug</u> and <u>Montblanc</u>, the plaintiff had already proven a
breach of the relevant agreements when seeking the injunction.[21]

The Court finds today that Plaintiff has pled facts
sufficient to avoid dismissal of its breach of contract claims,
and recognizes the presence of specific performance as a remedy
for breach pursuant to the Agreements.  However, because

---

[21] In <u>Mylan</u>, the plaintiff sought an injunction after the
defendant "continued to engage in the precise conduct that the
jury found to be a breach" and after demonstrating "it suffered
an irreparable injury and that monetary damages [we]re
inadequate to compensate for such injury."  <u>Id.</u> at *3. Here,
Plaintiff has made no such showing and is instead arguing,
without any relevant and authoritative case law, that it need
not do so.

Plaintiff has not demonstrated sufficiently that a breach has occurred (see Order on Mot. for Prelim. Injunc. 18; infra at III.C.), Plaintiff is not entitled to specific performance at this time, nor can irreparable harm be presumed. Without such showing of irreparable harm, Plaintiff's original Motion for Preliminary Injunction was denied, and Plaintiff's pending Motion to Amend similarly is DENIED.

III. CONCLUSION

For the foregoing reasons, Defendants LGI and YSL's Motions to Dismiss Claim One are DENIED. Defendant Kering's Motion to Dismiss is DENIED as to Count One and GRANTED as to Claims Two through Eight without prejudice. KAI's Motion to Dismiss all claims is GRANTED without prejudice.

Should Plaintiff choose to file a Second Amended Complaint, such pleading shall be filed within 45 days of the date of this Order. Defendants shall move to dismiss or Answer the Second Amended Complaint within 45 days of service.

SO ORDERED.

Dated:     New York, New York
           March 25, 2015

_Deborah A. Batts_
Deborah A. Batts
United States District Judge

47